SOCIAL SECURITY ADMINISTRATION

Office of Hearings Operations

10222 SAN PEDRO AVENUE
SAN ANTONIO, TX 78216-3820

Date: March 25, 2025

Kimberly Frakes
7034 Smokewood Drive
Corpus Christi, TX 78413

## Notice of Decision – Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

### When Will You Get Paid

Another office will process my decision. That office may ask you for more information. You should receive payment in 40-60 days of the date of this notice. However, some cases may vary. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

Form HA-L76 (07-2024)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

**Social Security Administration**
**Office of Appellate Operations**
**6401 Security Blvd**
**Baltimore, MD 21235-6401**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

### What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

### How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

### The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.



See Next Page

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (866) 613-2859.

SOCIAL SECURITY
3801 S PORT AVE
CORPUS CHRISTI, TX 78415-4534

Ben Barnett
Administrative Law Judge

Enclosures:
Decision Rationale

cc: Gregory Haines Bruno
Brown and Brown Absence Services Group LLC
300 N Beach Street
Daytona Beach, FL 32114-3304

# SOCIAL SECURITY ADMINISTRATION
## Office of Hearings Operations

## DECISION

**IN THE CASE OF**

Kimberly Frakes
(Claimant)

(Wage Earner)

**CLAIM FOR**

Period of Disability and Disability Insurance Benefits

21WO029D53880
(Beneficiary Notice Control Number)
*Social Security Number removed for your protection*

## JURISDICTION AND PROCEDURAL HISTORY

This case is before me on a request for hearing dated September 23, 2024 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing by audio using a telephone (20 CFR 404.936(c)) on February 25, 2025. Brent Jeansonne, an impartial vocational expert, also appeared at the hearing (Ex. 16B). The claimant is represented by non-attorney representatives Gregory Haines Bruno and Darnae Wells, who was present with the claimant (Ex. 1B, 17B)

The claimant is alleging disability since September 7, 2021.

The claimant's representative filed a brief, which I have considered (Ex. 15E).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

1. **The claimant's date last insured is December 31, 2026 (Ex. 8D/1).**

2. **The claimant has not engaged in substantial gainful activity since September 7, 2021, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

The record shows no evidence of earnings during the relevant period.

3. **The claimant has the following severe impairments: right ankle fusion status post complex regional pain syndrome; lumbar and thoracic degenerative disc disease; left shoulder adhesive capsulitis; and obesity (20 CFR 404.1520(c)).**

4. **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

See Next Page

**5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can sit for four hours and stand and/or walk for one hour for a total of five hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl but can never climb ladders, ropes or scaffolds. The claimant can occasionally reach with the left upper extremity. The claimant should avoid all exposure to hazards such as operational control of moving machinery and unprotected heights.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

The medical evidence supports that the claimant suffers from right ankle fusion status post complex regional pain syndrome; lumbar and thoracic degenerative disc disease Prior to the relevant period, in November 2020 she underwent ankle reconstruction surgery (Ex. 27F/3). January 2021 MRI showed interval development of mild tenosynovitis of the flexor hallucis longus., at and distal to the master know of henry; and chronic sprains of the ATFL and CFL (Ex. 1F/5, 20F/66, 22F/43). In April 2021, she underwent a right arch fibroma removal (Ex. 1F/2, 13F/4, 20F/61). Following her onset date, the claimant reported severe foot pain (Ex. 1F/2, 2F/18, 15F/2, 22F/40, 23F/7, 27F/4). She reported her pain was exacerbated by walking and standing for prolonged period (Ex. 2F/14, 15F/52, 23F/39, 32F/1). Upon examination, the claimant had tenderness to palpation and a decreased range of motion of her foot (Ex. 2F/15, 15F/3, 23F/8, 32F/3). The claimant also had swelling and discoloration to her foot and ankle (Ex. 2F/34, 15F 39, 23F/44). Additionally, she had reduced sensation to her right lower extremity (Ex. 3F/31, 6F/23, 13F/6). The claimant had decreased strength in her right lower extremity (Ex. 3F/30, 9F/6, 13F/7). She had an antalgic gait (Ex. 1F/5, 2F/15, 13F/5, 16F/3, 26F/72). At times, she used a scooter (Ex. 23F/3). Her medication included Gabapentin, Lyrics and Cymbalta (Ex. 2F/16). In February 2022 she had a steroid injection (Ex. 27F/4). More recently, in October 2024 she had her second through fifth metatarsal; head ostectomy and second through fifth proximal interphalangeal joints resection (Ex. 25F/7).

The claimant reported back pain (Ex. 2F/26, 15F/7, 23F/51). A January 2022 MRI showed herniation impinging thecal sac at L2-L3, L3-L4 and L4-L5; and at L5-S1 herniation that impinges on S1 nerve root bilaterally with mild narrowing of the medial aspect (Ex. 15F/62, 23F/28, 32F/2). In February, March and April 2022 she had lumbar sympathetic blocks (Ex. 2F/24, 28, 32, 15F/9) but she reported minimal short-term relief (Ex. 23F/47). A July 2022 MRI showed mild degenerative disease of the thoracic spine with mild spondylosis (Ex. 15F/12, 17F/13). Moreover, in July 2022, she had spinal cord stimulator trial (Ex. 2F/12, 15F/45). The claimant's first implant was in September 2022, but had to be removed due to infection and a second implant was placed in March 2023 (Ex. 9F/8, 11F/19, 23F/32). However, the claimant continued to report back pain (Ex. 2F/7, 6F/23, 23F/12, 32F/1). Upon examination, she had tenderness to palpation (Ex. 23F/13). The claimant also had positive straight leg raises (Ex. 13F/6). An April 2024 x-ray showed multilevel disc height loss most prominent at L3-L4 and

See Next Page

L4-L5 with mild spurring; and mild to moderate facet sclerosis at L4-L5 and L5-S1 bilaterally (Ex. 19F/27).

The medical evidence supports that the claimant suffers from left shoulder adhesive capsulitis (Ex. 19F/46). She reported shoulder pain (Ex. 7F/8, 15F/11, 19F/53, 22F/36, 23F 2). Upon examination, the claimant had a reduced range of motion (Ex. 15F/30, 23F/8, 29F/59). She had positive impingement signs (Ex. 22F/19, 29F/9). The claimant was referred to physical therapy (Ex. 29F). In January 2023 she had a steroid injection (Ex. 7F/18). A June 2023 x-ray showed mild osteoarthritis of the left acromioclavicular joint (Ex. 19F/48). A July 2023 MRI showed thickening of the inferior glenohumeral ligament with periligamentous edema; mild supraspinatus and infraspinatus tendinosis; and tearing of the posterior superior labrum (Ex. 15F/12, 17F/9, 28F/5). In August and September 2023 she had steroid injections (Ex. 22F/11) but the claimant reported relief for only a few days (Ex. 22F/16). In January 2024 she underwent shoulder manipulation (Ex. 23F/3, 26F/55). The claimant completed a second round of physical therapy (Ex. 14F, 26F/49) but her provider noted very little improvement (Ex. 14F/5). However, the claimant continued to report pain (Ex. ). Her provider noted she guards and demonstrated pain behaviors with active range of motion (Ex. 26F/52).

The claimant's conditions are further compounded by her diagnosis of obesity (Ex. 8F/7). The claimant is 5 feet and 8 inches tall, and her weight fluctuated between 155 and 204 pounds, and, at times, she has a body mass index (BMI) over 30, which indicates severe obesity (Ex. 2F/8, 16F/5). In accordance with Social Security Ruling 19-2p, obesity is considered a severe impairment, and I have considered it in evaluating the claimant's residual functional capacity.

Under the current rules for evaluating medical evidence in claims filed after March 27, 2017, I did not provide articulation about evidence that is neither inherently valuable nor persuasive. This includes issues reserved to the Commissioner, such as whether or not a claimant is disabled or able to work or whether or not the claimant meets or equals a listing, and decisions by other governmental or non-governmental entities. (20 CFR 404.1520b(c)(1) and (3)). Nor does the undersigned provide articulation for statements that are not provided by medical sources or that do not state what the claimant can do despite her impairments. (20 CFR 404.1513(a)(2)). I have fully considered the medical opinions and prior administrative medical findings as follows:

State agency medical consultant Dr. Gerrish, in May 2023, and Dr. Smith, in August 2024, reviewed the claimant's medical record. They found the claimant could perform light work but never climb ladders, ropes or scaffolds and occasionally perform all other postural activities (Ex. 2A, 4A). I find Dr. Gerrish's report partially persuasive as it was supported by analysis of the record (Ex. 2A/5-6, 4A/6-7) however the longitudinal record is consistent with greater limitations. The medical evidence supports that the claimant suffers from right ankle fusion status post complex regional pain syndrome; lumbar and thoracic degenerative disc disease (Ex. 2F/7, 15F/12, 19F/27). In November 2020 she underwent ankle reconstruction surgery (Ex. 27F/3). The claimant reported severe foot pain (Ex. 1F/2, 2F/18, 15F/2, 22F/40, 23F/7, 27F/4). She reported her pain was exacerbated by walking and standing for prolonged period (Ex. 2F/14, 15F/52, 23F/39, 32F/1). Upon examination, the claimant had tenderness to palpation and a decreased range of motion of her foot (Ex. 2F/15, 15F/3, 23F/8, 32F/3). Additionally, she had reduced sensation to her right lower extremity (Ex. 3F/31, 6F/23, 13F/6). The claimant had

See Next Page

decreased strength in her right lower extremity (Ex. 3F/30, 9F/6, 13F/7). She had an antalgic gait (Ex. 1F/5, 2F/15,13F/5, 16F/3, 26F/72), which is consistent with sedentary work with reduced standing and walking and postural limitations. Her medication also included Gabapentin, Lyrics and Cymbalta (Ex. 2F/16), which is consistent environmental limitations. Further, the claimant reported back pain (Ex. 2F/26, 15F/7, 23F/51). Upon examination, she had tenderness to palpation (Ex. 23F/13). The claimant also had positive straight leg raises (Ex. 13F/6). She had spinal cord stimulator implanted (Ex. 9F/8, 11F/19), which is consistent with sedentary exertion with reduced sitting. The medical evidence supports that the claimant suffers from left shoulder adhesive capsulitis (Ex. 19F/46). She reported shoulder pain (Ex. 7F/8, 15F/11, 19F/53, 22F/36, 23F/2). Upon examination, the claimant had a reduced range of motion (Ex. 15F/30, 23F/8, 29F/59). She had positive impingement signs (Ex. 22F/19, 29F/9), which is consistent with sedentary exertion and manipulative limitations. For the aforementioned reasons, I find Dr. Gerrish's report partially persuasive.

Physical therapist Mr. Cronkhite performed a functional capacity evaluation in February 2024. Mr. Cronkhite opined the claimant could perform sedentary work and is able to tolerate a maximum of one hour of light duty. Mr. Cronkhite reported the claimant should avoid prolonged sitting, standing, driving, walking, walking on uneven surfaces, squatting, kneeling, climbing ladders and stairs and lifting and carrying (Ex. 13F/10, 19F/19). I find Mr. Cronkhite's opinion generally persuasive as it supported by exam findings though the entirety of the record is consistent with more specific functional limitations. During the exam, the claimant reported her pain ranges from a six to a ten, with a ten being the most severe. She had a stiff and guarded gait with decreased arm swing. The claimant had abnormal sensation and reduced strength her right foot. She also a reduced range of motion of her ankle and foot. In addition, the claimant had positive straight leg raises. She was only able to lift five pounds to her waist and overhead (Ex. 13F/4-10), which supports sedentary exertion with nonexertional limitations. These findings are consistent with the entirety of the record. The medical evidence supports that the claimant suffers from right ankle fusion status post complex regional pain syndrome; lumbar and thoracic degenerative disc disease (Ex. 2F/7, 15F/12, 19F/27). In November 2020 she underwent ankle reconstruction surgery (Ex. 27F/3). The claimant reported severe foot pain (Ex. 1F/2, 2F/18, 15F/2, 22F/40, 23F/7, 27F/4). She reported her pain was exacerbated by walking and standing for prolonged period (Ex. 2F/14, 15F/52, 23F/39, 32F/1). Upon examination, the claimant had tenderness to palpation and a decreased range of motion of her foot (Ex. 2F/15, 15F/3, 23F/8, 32F/3). Additionally, she had reduced sensation to her right lower extremity (Ex. 3F/31, 6F/23, 13F/6). The claimant had decreased strength in her right lower extremity (Ex. 3F/30, 9F/6, 13F/7). She had an antalgic gait (Ex. 1F/5, 2F/15,13F/5, 16F/3, 26F/72), which is consistent with sedentary work with reduced standing and walking and postural limitations. Her medication also included Gabapentin, Lyrics and Cymbalta (Ex. 2F/16), which is consistent environmental limitations. Further, the claimant reported back pain (Ex. 2F/26, 15F/7, 23F/51). Upon examination, she had tenderness to palpation (Ex. 23F/13). The claimant also had positive straight leg raises (Ex. 13F/6). She had spinal cord stimulator implanted (Ex. 9F/8, 11F/19), which is consistent with sedentary exertion with reduced sitting. The medical evidence supports that the claimant suffers from left shoulder adhesive capsulitis (Ex. 19F/46). She reported shoulder pain (Ex. 7F/8, 15F/11, 19F/53, 22F/36, 23F/2). Upon examination, the claimant had a reduced range of motion (Ex. 15F/30, 23F/8, 29F/59). She had positive impingement signs (Ex.

See Next Page

22F/19, 29F/9), which is consistent with sedentary exertion and manipulative limitations. Therefore, I find Mr. Cronkhite's opinion generally persuasive.

The claimant's provider Mr. Cain, FNP, complete a medical source statement in October 2024. Mr. Cain opined the claimant could sit, stand and walk for one hour each in an eight hour day with frequent breaks every five to ten minutes. Mr. Cain reported the claimant could never lift and carry or perform postural activities. Mr. Cain also opined the claimant would be absent twenty days per month (Ex. 21F). I find Mr. Cain's opinion partially persuasive as severe limitations are supported by a treating relationship however the longitudinal record is consistent with the claimant having greater abilities. The medical evidence supports that the claimant suffers from right ankle fusion status post complex regional pain syndrome; lumbar and thoracic degenerative disc disease (Ex. 2F/7, 15F/12, 19F/27). In November 2020 she underwent ankle reconstruction surgery (Ex. 27F/3). The claimant reported severe foot pain (Ex. 1F/2, 2F/18, 15F/2, 22F/40, 23F/7, 27F/4). She reported her pain was exacerbated by walking and standing for prolonged period (Ex. 2F/14, 15F/52, 23F/39, 32F/1). Upon examination, the claimant had tenderness to palpation and a decreased range of motion of her foot (Ex. 2F/15, 15F/3, 23F/8, 32F/3). Additionally, she had reduced sensation to her right lower extremity (Ex. 3F/31, 6F/23, 13F/6). The claimant had decreased strength in her right lower extremity (Ex. 3F/30, 9F/6, 13F/7). She had an antalgic gait (Ex. 1F/5, 2F/15,13F/5, 16F/3, 26F/72), which is consistent with sedentary work with reduced standing and walking and postural limitations. Her medication also included Gabapentin, Lyrics and Cymbalta (Ex. 2F/16), which is consistent environmental limitations. Further, the claimant reported back pain (Ex. 2F/26, 15F/7, 23F/51). Upon examination, she had tenderness to palpation (Ex. 23F/13). The claimant also had positive straight leg raises (Ex. 13F/6). She had spinal cord stimulator implanted (Ex. 9F/8, 14F/19), which is consistent with sedentary exertion with reduced sitting. The medical evidence supports that the claimant suffers from left shoulder adhesive capsulitis (Ex. 19F/46). She reported shoulder pain (Ex. 7F/8, 15F/11, 19F/53, 22F/36, 23F/2). Upon examination, the claimant had a reduced range of motion (Ex. 15F/30, 23F/8, 29F/59). She had positive impingement signs (Ex. 22F/19, 29F/9), which is consistent with sedentary exertion and manipulative limitations. However, as I found the claimant disabled, consistent with above detailed analysis, it is not necessary to discuss why they are not as limited as Mr. Cain opined.

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as an occupational therapy assistant (DOT 076.364-010), which the vocational expert classified as medium as generally performed, heavy as the claimant performed it, and skilled with an SVP of 6. The demands of the claimant's past relevant work exceed the residual functional capacity.

**7. The claimant was a younger individual age 45-49 on the established disability onset date (20 CFR 404.1563).**

**8. The claimant has at least a high school education (20 CFR 404.1564).**

See Next Page

**9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).**

The vocational expert did not identify any transferable skills.

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21. To determine the extent to which the claimant's additional limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors there are no jobs in the national economy that the individual could perform.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, a finding of "disabled" is appropriate under the framework of the above-cited rule.

**11. The claimant has been under a disability as defined in the Social Security Act since September 7, 2021, the alleged onset date of disability (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on June 21, 2022, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since September 7, 2021.

/s/ *Ben Barnett*
Ben Barnett
Administrative Law Judge

March 25, 2025
Date